Good morning, Your Honors. Michael Sacksteder of Fenwick & West on behalf of Appellants with me as Coyne Nguyen, also of Fenwick & West. We'd like to split our argument. I will be addressing the removal and remand issues, the summary judgment on the contract and breach of fiduciary duty claim issues, and also we believe that the issue concerning the notice of appeal has been appropriately and fully addressed in the briefing. However, if there are any questions concerning that, I'd be happy to address those as well. First on the issue of removal and remand, this is simply a case where the plaintiff, acting pro se, named a party incorrectly, had the right party in mind, attempted to serve that party, and actually left the complaint on the second attempt to serve with that party, but simply got the name wrong. That was a California party that would have destroyed diversity. In the motion to remand, plaintiffs stated, plaintiffs will now confidently add the correct California party to an amended complaint. The district court completely ignored that argument. That pleading by a pro se plaintiff construed liberally could even be considered as a motion to amend the complaint there. That was simply not addressed at all by the district court in the opinion, which simply denied the motion for remand. We believe that that is reversible error, and I believe Roller Derby does not dispute any of this. All they say is that there was no cause of action alleged in the complaint against that misnamed party. We believe that that is not correct, that it was alleged in the complaint, and also that it was explained in the motion to remand. Well, let me go back to the notice of appeal, because if it's inadequate as to Debeam, then don't we lack jurisdiction over the appeal of Debeam's claims? And I'm concerned about that, because you know what the problem is. I mean, it doesn't appear to have been prepared by counsel. It was not prepared by counsel, but as this Court has stated in the In re Bigelow case, that is not fatal to an appeal. It is a notice and not a issue. We also think that reading the notice of appeal as it was prepared by a pro se, and reading it liberally, that it identified Debeam's claims in referencing the earlier opinions by Judge McLaughlin, which related only to the motion for remand and to the summary judgment motion, which related  only to the motion for remand and to the summary judgment motion, which related only to the motion for remand and to the summary judgment motion. Well, is Bigelow really on point? Because here Evans didn't sign the notice on behalf of the partnership. It says Brian Evans pro se. Not Brian Evans pro se on behalf of the partnership, but just Brian Evans pro se. That distinguishes this case from Bigelow somewhat, doesn't it? Somewhat, but I think it's a different case, and that's dealt with by the amendment to Rule 3. It's dealt with by retail flooring. It's dealt with by the liberal construction of the pleading, which states that under Rule 3C1A and also the Spain case from the Seventh Circuit, the naming of Debeam in the caption is sufficient by itself. In addition, the statement concerning the earlier rulings by Judge McLaughlin identifies Debeam's claims. By implication, that those rulings related almost entirely to Debeam's claims, thus Roller Derby did have sufficient notice concerning the issues relating to Debeam. Yeah, the Bigelow panel noted that a notice of appeal is just that, a notice. It isn't a motion or a pleading. And in that case, after the corporate officer filed the notice, the lawyer promptly added a formal appearance and took over. You know, Evans filed the opening brief in this case pro se. This is another distinguishing factor from this case. That is correct, Your Honor. However, we believe that now that pro bono counsel has been appointed and all of the supplemental briefing has been completed by ourselves. Somehow, non-pro-tunk, all of that operates retroactively to take a notice of appeal that I think is defective and make it all right? I'm not sure I understand your question, Your Honor. Well, I mean, I see all kinds of problems. And simply because a lawyer then pops up a long time down the line and says, I'm here to argue the case, that eliminates all the problems with the notice of appeal? The problems with the notice of appeal are, first, that it was signed by Mr. Evans, and, second, the issue concerning whether it provides notice. I don't think Mr. Evans' signature has anything to do with the issue of whether the notice provides notice to Roller Derby about who is appealing. Well, but still, I mean, you have the problem with the requirement that a corporation like that or a partnership, I mean, there must be an attorney. He wasn't. Neither was the corporate officer that signed the notice of appeal in Bigelow. And we would submit the Bigelow controls in this case, that Mr. Evans, although he did, it's true, submit a brief on behalf of D-Beam and promptly as soon as we were Bigelow focuses very much on the fact that the lawyers came into the program right after the notice of appeal and took over. Here, that didn't happen. That's correct. It seems that we utterly eviscerate the requirement if we regard this as an effective notice of appeal. And just say, oh, well, a pro se can file a notice of appeal, a pro se can file a brief, can then file a reply brief, can file all the papers. But at some point a lawyer shows up, all of that is irrelevant. Well, in this case, it is not correct that Mr. Evans filed anything after his opening brief. He filed an opening brief. That's correct, Your Honor. But there has been a complete round of briefing since we joined the case. We joined the case when the pro bono panel appointed us. And prior to that, this issue had not been raised until the opposition brief of roller derby. Well, I guess that then and the Mr. Evans brief was then stricken at that point and then the new round of briefs came about, right? Our briefs are, I believe the order that we received was to file supplemental briefs. We would be happy to stipulate to disregard Mr. Evans' brief and just consider the supplemental briefing to be the briefing for the case. We joined the case when we were asked to join the case by the court. And we don't believe that Mr. Evans' actions prior to that should have any impact on whether D-Beam has standing to appeal. Well, Evans was admonished at various times by the district court that he couldn't do this by himself, that he had to have counsel, right? That's correct, however. And went ahead anyway and signed the notice of appeal and filed a brief all by himself without getting counsel. He was, that actually happened in several instances throughout the case. He also filed a motion for reconsideration, which dealt with issues that related to D-Beam's claims. And at that point, Judge Carter made no complaint at all about that. He had earlier obtained counsel to oppose the summary judgment motion. As is noted in the briefs, that counsel was sanctioned and withdrew from the case. And at that point, there were no other claims that were ongoing that D-Beam had. Mr. Evans sought to reconsider those claims, however, by filing a motion for reconsideration that dealt with D-Beam's claims. Judge Carter didn't say anything about that and did not strike the back of action in continuing to file a notice. How does that relate back? So what you're saying that the judge allowing him to do that despite other admonitions would somehow then give him the right to proceed if he did? He followed the judge's admonitions, the first judge's admonitions, when he was ordered to find counsel. He found counsel as soon as he could. But then D-Beam's claims were extinguished. The only thing that was left was to reconsider various rulings that related to those claims. Mr. Evans did that on his own behalf because his lawyer had left the practice of law. And when he did that, Judge Carter did not make any kind of a complaint about it. So in filing what is a notice and not a pleading, according to the Bigelow case, Mr. Evans did that by signing it himself, relying on Judge Carter's actions, or rather lack of action, with his earlier acts. All right. Briefly on the summary judgment on All right. Let's go back, because I was thinking about that and not really listening to you, for which I apologize. Go back again and give us your removal argument again. All right. This was a situation where D-Beam and Evans filed suit in state court, attempted to serve a company that it turned out was called California Advanced Sports. He believed it was called Pacerskates Incorporated, which was a trademark that had been used by that company. He attempted to serve several times, and eventually the complaint was actually left at California Advanced Sports by the process server. And that's in the briefing in the court below. And then simply misnamed the party. This was a situation where he's not attempting to add a new party. He's attempting to correct a mistake in naming the earlier party. Well, he didn't name the right party. He did not name the correct party. Did he ever? Because I don't think he ever did. He indicated that he was going to. That's the point. He didn't. That's correct. He didn't. He was a pro se litigant who was thrown into this. Well, you know, but he didn't. So how do we get around that? I think that you can construe what he said in his motion to remand liberally. He said plaintiffs will now confidently add the correct party, the California party. He didn't. But that motion was granted very shortly or was denied rather very shortly after. The motion to remand was denied very shortly thereafter without even addressing the existence of this simply misnamed party. And we don't think that he moved for reconsideration or do anything to name the party he thought was the correct party. I mean, I don't recall if he ever attempted to amend the complaint along those lines. There was some statement, but then it never happened. So as you look at the record, as I look at the record, the way it is shows complete diversity. The record shows that Mr. Evans indicated that plaintiffs will now add the California party. How are we supposed to write an opinion that accommodates that? I mean, that just says you don't even have to follow any of the rules. Just if you make a statement, oh, well, that's good enough. That's even far beyond liberally construing pleadings and things like that. It wasn't even addressed by the district court, however, the motion without even giving him a chance to amend. Well, did he actually make a motion or did he just say something? He didn't make a formal motion. How do we write an opinion that says even though he didn't make a formal motion, even though he didn't take any steps to do what he said he wanted to do, nevertheless, at this point, we're going to let him. We're going to say, well, it was close enough for litigation. I mean, how do we write an opinion without just blowing open all the rules? I think that you can say that because he was a pro se litigant who was in a very difficult situation with a lot going on, he was opposing he was filing a motion to remand. He was opposing a motion to dismiss, which then was converted into a summary judgment motion. He was almost done briefing the motion to dismiss when suddenly he found out it was a summary judgment motion. He was ordered to find counsel, and he's dealing with this remand issue. Under those circumstances, I think that you can say that the statement in the motion to remand is a request to amend the complaint or at least should have been considered by the court as a request to amend the complaint, and he should have been given time to do that, and he wasn't. That's a cogent argument. In the breach of contract claims, very, very briefly, we have two arguments. One is that it was an executory contract, that it hadn't reached its conclusion. Both parties continued to perform, and under California law, that permits the filing of a lawsuit after the termination of the contract. We think that the district court misapplied California law on that issue. And second, fraudulent concealment. There are actually three instances where facts relating to D-Beam's cause of action were concealed. First, incorrect sales reports were provided to Mr. Evans and to D-Beam, which failed to identify all of the sales that had been made. Second, incomplete documents were provided to Price Waterhouse during the audit. Those documents were not sufficient to permit these professional accountants to audit the books under generally accepted accounting practices. And finally, most egregiously, there were altered documents, documents that were provided to Price Waterhouse, which redacted an entire year of sales. And that was not learned until those documents were again subpoenaed from Roller Derby's auditors several years later during the litigation. Which claim are you focusing on now? This is fraudulent concealment, and it really relates to the fraud claim and the breach of contract claim. And these documents, which are clearly altered, there has been no attempt whatsoever by Roller Derby to address this whatsoever. And we think it's simply inequitable to permit Roller Derby to hide information from Mr. Evans upon which his claims are based, and then say that the statute of limitations bars those claims. Finally, on the breach of fiduciary duty claims, claim this was a situation where D. Beam and Evans were at Roller Derby's mercy. They relied on Roller Derby to keep and furnish honest accountings of sales and to use best efforts to develop and market the patented products. That is a situation where D. Beam and Evans were relying on Roller Derby's honesty. I think that creates a fiduciary relationship. We've been asked to say that Roller Derby made payments on behalf of Mr. Evans to Winston Financial, Al Adamson, and Stephanie Ashcock, and that indicates further that there was a fiduciary relationship. I had hoped to leave some time for rebuttal, a minute or two, if I may. We'll give you some. Thank you, Your Honor. Thank you, Counsel. What's he going to talk about? The fraud and the remaining claims. Go ahead. Thank you. We ask a lot of questions. We do. Point of win for the appellants. The district court erred in granting summary judgment based on statute of limitation ground in a suit of fraud claim for two reasons. First, the California statute says that fraud does not accrue until discovery by the aggrieved party of the acts constituting fraud. Here, much of Roller Derby's fraudulent acts remain undiscovered until discovery when the plaintiffs obtain complete and unaltered records. And secondly, when the fraud is continuing, the statute is told of even after discovery of fraud until the last overt act. Here we will submit that the fraudulent accounting continue in every quarterly report until the patents expire in 2000 and the last quarterly report was submitted in 2001 constituting the last overt act. Was there a sufficient allegation of fraudulent intent here? It seems the district court felt there wasn't. The district court found that the plaintiff did not inadequately plead fraudulent intent. We would submit that the court, if the court were to interpret the complaint liberally for pro se litigants, that the complaint should allege fraudulent intent. In that case, the district court should have granted limited opportunity for discovery. What was there? Well, I mean, how liberal do we go? What are you talking about in the complaint that could somehow be construed as alleging fraudulent intent? In the complaint, the It looks like it's just not there. Yeah, what part of it, what language should we construe as alleging fraudulent intent? There is no actual language in the complaint. So how do we construe it? How do we construe nothing? You're asking us to add something that just isn't there. I couldn't find anything to construe in your favor. What we're asking is that the court reverse the district court's ruling because the district court did not allow the pro se litigants a chance to obtain limited discovery or in the alternative to leave to amend the complaint. Because in this case, if the litigants had had a chance to amend the complaint, they would have added a cause of action. They would have plead fraudulent intent. All right, what's the other point you'd like to talk about? The other point I would like to discuss is the usury claim at trial. Yeah, the note wasn't absolutely repayable. We would submit that it is absolutely repayable because How is that? If no money is made, no money is paid. The note itself actually states other sources of repayment other than the royalties. The note, two of which were Mr. Evans' ownership in D-Beam Corporation and D-Beam Limited Partnership. His ownership in those corporations are distinct from the royalties payment coming in from Roller Damage. Repayment shall be from borrowers approximate 70 percent ownership of D-Beam Corporation or 76 percent ownership of D-Beam Limited Partnership. That's correct, Your Honor. So doesn't it look like repayment was only to be made by royalty payments? We would submit that the language, to construe that language to just royalties payment would not be, would leave out the payments, the other two payment sources, which do not have anything to do with the royalties payment. All right. Thank you, counsel. We'll hear from you next time. Thank you. Good morning, Your Honors. Karen Julian Vogel on behalf of the Appellee Roller Derby. The Appellant has raised a number of issues in his appeal, and we've addressed them, I think, fully in our briefing, so I'll touch on just some of them this morning. The first thing I think I want to clear up right from the get-go is that we hear a lot about the pro se litigant, but the issue here, D-Beam is not a pro se litigant and cannot be, not even from the beginning when they filed their complaint in state court. In state court as well as in federal court, the entity needed to be represented by counsel. And so to give additional kind of latitude to a pro se litigant, who isn't a pro se litigant or shouldn't be one, I think is carrying the latitude given to a pro se litigant far beyond whatever normal boundaries are there. So I just want to make that point from the beginning. There is not a pro se litigant here, D-Beam. D-Beam had to be represented by counsel, and to the extent it wasn't, Mr. Evans was improperly practicing law without a license. I want to also address the issue of the proper appellant here. The test is whether from the designation, the notice of appeal, the designation of the appellant in the notice of appeal, whether it's objectively clear that the party intended to appeal. And I think it's not clear at all here. And I think one of the best indications of that is this court's order are ordering a pro per attorney to represent the appellant. Not the appellant, not D-Beam, but rather just the appellant. So that even the counsel that are here this morning representing Mr. Evans. The pro bono? Pro bono. Okay, because you said pro per attorney. I'm sorry, pro bono, yes, pro bono attorneys. So even the attorneys that are here representing Mr. Evans were only appointed by this court to represent Mr. Evans. And were not appointed to represent D-Beam. Clearly, at least this court thought that the notice of appeal only was on behalf of Mr. Evans and not also on behalf of D-Beam. I think it's also clear from the notice itself, while it carries forward the caption from the district court, that's the only place in the notice of appeal where there's any mention of D-Beam. No place else in the notice of appeal is there any mention of D-Beam. Further, it is signed by Mr. Evans pro se and not on behalf of any entity. On the issue of the removal, there always has been complete diversity in this case. There never has been a party that would, added to the complaint, that would destroy that diversity. They argue that California Advanced Sports, I think is the name of the entity, would have destroyed diversity. But it was well within the court's discretion not to allow that party to be added, even if it had been properly put before the court. At that point, the party was not a necessary party to the litigation. It was not indispensable. Adding the party would destroy jurisdiction. And under the rules, there's no requirement that the court add the party. They claim that they had causes of action that were against this party. But in actuality, they didn't. The party wasn't necessary for the plaintiff to get complete relief. The party that they wanted to add was a wholly owned subsidiary of Roller Derby and was not the contracting party in any sense. So it would be hard to know where there would be any kind of claim for relief that they could assert against that party. There's no question but that the party was a witness. But simply being a witness to the litigation doesn't mean that the party was necessary for the litigation to be named as a party. On the summary judgment itself, we believe that the court ruled properly on all the statute issues. There was no question but that Mr. Evans knew well earlier even than the evidence that was provided to the court about the potential about the breaches of contract, alleged breaches of contract, about the fraud. He had been talking to different people at factories and so forth connected with Roller Derby, and he had learned from them that there were greater shipping of his product than what he thought was the case from the documents that he had gotten. There's no question but that he knew about these issues long before the four years previous to filing his complaint. They claim that there's an issue about tolling. I don't think there's any evidence to really establish any fraudulent concealment or fraudulent concealment here to have tolling. The documents that they claim were altered in some way and provided really go to proving up damages and not to the issue of liability, and they had plenty of information about the issue of liability long before the statutory period started. On the usury claim, I don't think there's much more to add beyond what's in our brief. It wasn't absolutely repayable. It was payable from the royalties. In fact, that's what happened. There's some language in here that suggests that it could be paid from another source, and I just read this for the third time and I can't find it. Do you know what they're talking about? I think what they're talking about is they're saying that the 70 percent ownership, to the extent that there might be some value to that other than the royalty payments, that there would be another source of repayment so that it would be kind of a security for it. I'm putting words in their mouth. I'm making an argument for them on that. And I would say there's been no evidence that there was any value to their ownership interest in the entity other than the royalty stream. Well, is there any evidence of the record that indicates other than just the language? No. So would we be speculating either by what you're saying or what they would say? We would be. The language of the contract is the language of the note is very clear. It is to be repaid. It promises to repay the sum as follows. Then it's very clear. Paid only from royalties. And, in fact, that's what happened. And the amount, the other issue about usury is there was never, I think, the amount of the note, the principal amount. It never got there. We were at $45,000 of repayment and that was it. And then there were no more royalty stream and there was no more repayment. And so, you know, you never got to the interest. You only got a partial repayment of the principal. Do you have anything else? Nothing else. Thank you, Your Honor. A couple of quick points, Your Honors. First of all, on the fraudulent concealment, that document that they say goes only to proving up damages, it goes to the existence of fraud and a breach of contract. It is a document that shows a line of sales for 1989. That document was provided to DBEAM and 1989 falls within the term of the agreement. And during that period, 1989, we have nothing in the record to show that they paid any royalties whatsoever to DBEAM. And we have a document that shows that they reported zero sales for the fourth quarter of 1989, and yet they submitted redacted documents, a document that had all the 1989 sales redacted from them to DBEAM's auditors. That document is DBSER100, is the version submitted to Price Waterhouse, and the version that was submitted to, was obtained under a subpoena from LaPrada and Flagle, the auditors for Roller Derby, is DBSER414. And you can see that there's a line of sales at the bottom for 1989 in one document, but not in the other one. And we submit that that relates to the cause of action and that it is evidence that they fraudulently concealed the cause of action. And a number of these issues on summary judgment, incidentally, are subject to a question of fact for the jury. And this is something that certainly should not be decided on summary judgment, whether they fraudulently concealed this cause of action. The only other points that I would make are that on the usury claim that the agreement says both the income from the limited partnership and the corporation, it's correct that counsel is speculating over where that money was coming from, but it clearly could come from anywhere else. What about the fact that the principal was never paid? Right. So you never got to the interest. How can you have a usury claim? Doesn't that trump all of this? Because under the agreement, portions of each payment were made, both principal and interest. So he was paying interest all along. If the court doesn't have any other questions, I'll... If the court doesn't say that, direct me to that language, please. I'm sorry? Direct me to that language. Which language? Actually, there is evidence at trial that there was a spreadsheet at trial that shows that a portion of each monthly payment actually went to the payment of interest. Is that spreadsheet in the record? Yes, it is, Your Honor. Where is it? It's D-B-F-E-R 46 at 920. All right. Thank you, counsel. The case just started. It is ordered to submit it. Thank you. Thank you, Your Honor. And we thank both of you for your participation in this case. It's an interesting assignment, and we're glad that lawyers are willing to step up and take it. Very helpful. Thank you both. May I thank the Master Court for the briefs of the public? Certainly. Mr. Adams. Yes. Yes. Thank you, sir. The next case on the calendar has been removed. Heraldes Estrada v. Ashcroft has been remanded to the BIA or to Mr. Ashcroft for further consideration. Acevedo Carranza submitted on the briefs. We will call Lange v. Ashcroft.
judges: Hall, Trott, Callahan